UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FREE SPEECH COALITION, INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>JAMES M. LEBLANC, *in his official capacity as* SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, *et al.*,<br><br>　　　　　Defendants. | Civil Action<br><br>No. 23-02123<br><br>Judge Susie Morgan<br><br>Magistrate Judge Donna Phillips Currault<br><br>Section "E" (2) |

**DEFENDANTS' REPLY SUPPORTING MOTION TO DISMISS**

I.    **The Court should decline Plaintiffs' invitation to defy the last decade of Fifth Circuit *Ex parte Young* "sufficient connection" precedent.**

Plaintiffs lose under binding precedent, so they invite the Court to defy it. Plaintiffs' lead argument requires the Court to hold that the Fifth Circuit has mangled *Young*'s 115-year-old enforcement-connection requirement in just about every published opinion touching that topic over the last decade or so.[1] But only two courts can make that call—the en banc Fifth Circuit and the Supreme Court. *See, e.g.*, *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir.1992) ("It has long been established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court."). And it's beyond cavil that a Fifth Circuit panel's "interpretation of Supreme Court precedent is binding under the rule of orderliness." *Montano v. Texas*, 867 F.3d 540, 545 (5th Cir. 2017). That's true "[e]ven if" another Fifth Circuit panel is "persuaded" that the "prior panel opinion is inconsistent with an earlier Supreme Court opinion." *Id.* (cleaned up).

The upshot? Even if the Court is convinced that every Fifth Circuit published opinion interpreting *Young*'s sufficient-connection requirement in the last ten years has gotten it badly wrong, the Court remains duty-bound to follow the Fifth Circuit's binding interpretation of *Young* unless and until the en banc Fifth Circuit or the Supreme Court says otherwise.

But even if the Court could *sua sponte* "correct" a decade of Fifth Circuit sufficient-connection law, Plaintiffs provide no good legal reason to do so. Plaintiffs do not identify any intervening decision of the en banc Fifth Circuit or the Supreme Court that works an "unequivocal"[2]

---

[1] *See, e.g.*, *Ostrewich v. Tatum*, 72 F.4th 94, 100–01 (5th Cir. 2023); *Richardson v. Flores*, 28 F.4th 649, 653–55 (5th Cir. 2022); *Tex. All. For Retired Ams. (TARA)*, 28 F.4th 669, 671–74 (5th Cir. 2022); *Lewis v. Scott*, 28 F.4th 659, 663–64 (5th Cir. 2022); *Tex. Democratic Party v. Abbott (TDP)*, 978 F.3d 168, 178–81 (5th Cir. 2020); *City of Austin v. Paxton*, 943 F.3d 993, 997–1003 (5th Cir. 2019); *Morris v. Livingston*, 739 F.3d 740, 745–46 (5th Cir. 2014).

[2] *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).

1

change in the routinely applied[3] requirements that a *Young* plaintiff show that each named defend-
ant, through compulsion or constraint, has both (1) a particular duty and (2) a demonstrated will-
ingness to enforce the particular provision challenged. Nor do Plaintiffs invoke any earlier-decided,
published Fifth Circuit precedent that unequivocally conflicts with *Ostrewich*, *Richardson, TARA*,
*Lewis*, *TDP*, or *City of Austin*.[4] Even if the Court could properly conduct its own rule-of-orderliness
inquiry afresh, there is no basis to ditch the sufficient-connection analysis those decisions demand.

That leaves the compulsion-or-constraint requirement. *Contra* Plaintiffs' contention, en-
forcement indeed requires compulsion or constraint. *City of Austin* tells us so. *See* 943 F.3d at 1002.
And that's significant: The panel declined to "define the outer bounds" of the sufficient-connec-
tion requirement, but *still* held that the requisite connection to enforcement was lacking, because
there was "no 'compulsion or constraint' on the part of" the named defendant. *Id*. In other words,
whatever components of the Fifth Circuit's sufficient-connection test might be subject to criticism
from some quarters, the baseline requirement of compulsion or constraint isn't among them.[5]

## II.     Plaintiffs can't avail themselves of *Young*'s "narrow exception"[6] to immunity.

Defendants showed in their opening brief that, for multiple independent reasons, Plaintiffs
failed to carry their Rule 12(b)(1) burden of pleading facts that plausibly establish a sufficient con-
nection between each Defendant and *enforcement* of each challenged law. Doc. 15-1. Plaintiffs' re-
sponse, however, does not correct Plaintiffs' dispositive failure to plausibly establish a sufficient

---

[3] *See, e.g.*, *Ostrewich*, 72 F.4th at 100; *TARA*, 28 F.4th at 672; *Lewis*, 28 F.4th at 663–64; *TDP*, 978 F.3d at 179; *Morris*, 739 F.3d at 746.

[4] For example, Plaintiffs take aim at Judge Jolly's *Okpalobi* plurality without clearly identifying an earlier-decided, published Fifth Circuit precedent with which Judge Jolly's *Okpalobi* plurality unequivocally conflicts.

[5] Stretching "enforcement" beyond what precedent permits, Plaintiffs point to a dictionary definition, a few district-court orders, a Tenth Circuit opinion, and a Fifth Circuit opinion arising in a different context. Those do not control the Court's analysis; *Ostrewich*, *Richardson, TARA*, *Lewis*, *TDP*, and *City of Austin* do.

[6] *Whole Woman's Health v. Jackson*, 141 S. Ct. 522, 532 (2021).

enforcement-related connection through the well-pleaded factual allegations of their complaint. Doc. 22. And the Defendant-specific portions of the response do not meet the merits of many of the arguments Defendants actually made. Doc. 22 at 16–19.[7] Instead, Plaintiffs double down on general allegations and invoke unpleaded theories that can't save the suit under *Young*.

### A.    Commissioner Dardenne

Plaintiffs' response doesn't correct the dispositive failure of Plaintiffs' complaint to sufficiently connect Commissioner Dardenne to enforcement of either challenged law by showing that Commissioner Dardenne—through the exercise of compulsion or constraint—has both (1) the particular duty and (2) a demonstrated willingness to enforce both challenged laws. Doc. 22 at 17–18.

For starters, that response rests principally on Dardenne's general duties as Commissioner of the Louisiana Division of Administration. Doc. 22 at 17–18. Again, those general duties are irrelevant to enforcement under *Young* and are not enough to carry Plaintiffs' Rule 12(b)(1) burden here. *See, e.g.*, *Lewis*, 28 F.4th at 664; *TARA*, 28 F.4th at 672–74; *City of Austin*, 943 F.3d at 999–1000. And Plaintiffs' bare assertion that the described duties do not "arise . . . from the general law" does not make it so. Doc. 22 at 16. The duties Plaintiffs describe are indeed general and have nothing to do with *enforcement* of "the *particular statutory provision* that is the subject of the litigation," *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022) (emphasis added) (quotation omitted), *i.e.*, the private right of action the Private Enforcement Act creates, and the public enforcement mechanism—exercisable only by AG Landry—the Public Enforcement Act creates.

What's more, as they did in the complaint, Plaintiffs point to the Division of Administration's general role in managing a "digitized credentialing program." Doc. 22 at 17–18. That "LA

---

[7] For clarity, the page numbers of Defendants' record citations correspond to the page numbers that are assigned by the Court's CM/ECF system and that appear in blue at the top of each page.

Wallet" theory does not establish any enforcement-related connection to either challenged law for the reasons given in Defendants' opening brief, Doc. 15-1 at 15–16, which Plaintiffs do not directly answer, Doc. 22 at 17–18. Plaintiffs also offer no answer to Defendants' argument that *Young* independently bars any award of injunctive relief against Commissioner Dardenne as to LA Wallet because such an award would compel Commissioner Dardenne's exercise of discretion, "in flat violation of *Young.*" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020); *compare* Doc. 15-1 at 9–10 *with* Doc. 22 at 17–18. Nor do Plaintiffs answer directly Defendants' argument that, as to the Public Enforcement Act, the *Young* analysis begins and ends with the "settled"[8] principle that there can be no enforcement-related connection to the Commissioner since AG Landry alone is "statutorily tasked" with enforcement. *Compare* Doc. 15-1 at 23 *with* Doc. 22 at 17–18; *City of Austin*, 943 F.3d at 998; *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. For Choice v. Abbott*, 141 S. Ct. 1261 (2021).

### B.      Secretary LeBlanc

What was true of Commissioner Dardenne is also true of Secretary LeBlanc. As with Commissioner Dardenne, Plaintiffs' response doesn't correct the dispositive failure of the complaint to sufficiently connect Secretary LeBlanc to enforcement of either challenged law by showing that Secretary LeBlanc—through the exercise of compulsion or constraint—has both (1) the particular duty and (2) a demonstrated willingness to enforce both challenged laws. Doc. 22 at 18–19.

Plaintiffs' efforts to tie Secretary LeBlanc to enforcement of the challenged laws elide many of the arguments Defendants made in their opening brief. *Compare* Doc. 15-1 at 13–15 *with* Doc. 22 at 18–19. They do not explain how the Court could properly award equitable relief purporting to

---

[8] *Lewis*, 28 F.4th at 663.

control Secretary LeBlanc's exercise of his discretion as to the "digitized identification card," since doing so would "impinge[] upon [his] discretionary authority in flat violation of *Young.*" *Richardson*, 978 F.3d at 242; *see also* Doc. 1 at ¶ 54 (bemoaning the allegedly "unconstrained discretion" associated with the "digitized identification card"). They do not explain how DPSC's power to issue a digitized identification card gives Secretary LeBlanc "the power to enforce" either challenged law. *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020). Nor do they answer directly Defendants' argument that, as to the Public Enforcement Act, the *Young* analysis begins and ends with the "settled"[9] principle that there can be no enforcement-related connection to the Secretary since AG Landry alone is "statutorily tasked" with enforcement. *Compare* Doc. 15-1 at 23 *with* Doc. 22 at 18–19; *accord City of Austin*, 943 F.3d at 998; *In re Abbott*, 956 F.3d at 709.

Instead, as with Commissioner Dardenne, Plaintiffs point primarily to Secretary LeBlanc's general duties as chief administrator of DPSC, as well as the general duties of DPSC itself. Doc. 22 at 18–19. But none of those general duties moves the needle. *See, e.g.*, *Lewis*, 28 F.4th at 664; *TARA*, 28 F.4th at 672–74; *City of Austin*, 943 F.3d at 999–1000. And here, as elsewhere, Plaintiffs' bare assertion that those general duties do not "arise . . . from the general law" does not make it so. Doc. 22 at 18. The duties Plaintiffs describe, and the statutes Plaintiffs reference, do not relate to *enforcement* of "the *particular statutory provision* that is the subject of the litigation," *Richardson*, 28 F.4th at 654 (emphasis added) (quotation omitted)—that is, the private right of action that the Private Enforcement Act creates and the public enforcement mechanism, exercisable by AG Landry alone, that the Public Enforcement Act creates. They are thus irrelevant.

---

[9] *Lewis*, 28 F.4th at 663.

C.     **AG Landry**

Plaintiffs' response doesn't correct the dispositive failure of Plaintiffs' complaint to suffi-

ciently connect AG Landry to enforcement of the *Private Enforcement Act* either.

On a Rule 12(b)(1) motion that facially (rather than factually) attacks jurisdiction, what

matters are the well-pleaded factual allegations of the complaint. *E.g.*, *Laufer v. Mann Hosp.,*

*L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021). There are no well-pleaded factual allegations of the com-

plaint that link AG Landry to enforcement of the *Private Enforcement Act*. Doc. 1 at ¶ 19. Defend-

ants explained this in their opening Rule 12(b)(1) brief, Doc. 15-1 at 16–17, but Plaintiffs offer no

real answer, Doc. 22 at 19. Plaintiffs' response instead invokes AG Landry's general "interest" in

upholding both laws. But a general interest in upholding the law does not equate to a particular

duty or a demonstrated willingness to enforce the challenged law. Plaintiffs also suggest AG Landry

is sufficiently connected to enforcement of the *Private Enforcement Act* because he is sufficiently

connected to enforcement of the *Public Enforcement Act*. Doc. 22 at 19. But that is wrong. The suf-

ficient-connection analysis must be undertaken provision-by-provision. *Cf. Richardson*, 28 F.4th at

654. And Plaintiffs have not pointed to anything in the Private Enforcement Act that demonstrates

AG Landry's (1) particular duty or (2) demonstrated willingness to enforce that particular law.

II.    **Plaintiffs failed to carry their Rule 12(b)(1) burden to show their standing.**

A.     **Plaintiffs lack standing to challenge the Private Enforcement Act.**

Plaintiffs acknowledge that any relief the Court could order "in this case would [not] oper-

ate as a legal bar against a private litigant suing under the Act in a separate action." Doc. 22 at 24

n.11. And Plaintiffs acknowledge that the Court lacks authority "to enjoin 'the world at large,' or

the 'challenged laws themselves,' or 'all unnamed private persons who might seek to bring their

own Private Enforcement Act suits.'" *Id.* at 24. In other words, even if the Court grants all the

relief the Plaintiffs seek, some applications of the Private Enforcement Act will survive Plaintiffs'

challenge. *See E.T. v. Paxton*, 41 F.4th 709, 720 (5th Cir. 2022).

Despite these acknowledgements, Plaintiffs insist that they have standing to challenge

Commissioner Dardenne's, Secretary LeBlanc's, and AG Landry's alleged "participat[ion]" in

administering the Private Enforcement Act. They contend that Article III's redressability and

traceability requirements are satisfied because this Court can offer them at least *some* relief through

an injunction or a declaratory judgment.  Doc. 22 at 20 ("[A] judicial decree declaring the Acts

unconstitutional, and an injunction precluding Defendants from participating in their enforce-

ment, would spare Plaintiffs from at least some of the harm[.]"). Plaintiffs are wrong.

### i.     *Plaintiffs Seek an Advisory Opinion.*

Start with declaratory relief. According to Plaintiffs, a declaration *suggesting*[10] the Private

Enforcement Act is unconstitutional would "discourage[e] putative litigants from wasting time

suing under a statute promising illusory awards of unrecoverable damages." Doc. 22 at 24. Plain-

tiffs say such relief might encourage Louisiana "to legislate with a defter hand." Doc. 22 at 25.

The problem for Plaintiffs is that declaratory relief merely suggesting that the law is uncon-

stitutional would be nothing but an advisory opinion. An opinion is advisory if it "advance[s] ex-

pressions of legal judgment upon issues which remain unfocused because they are not pressed be-

fore the Court with that clear concreteness provided when a question emerges precisely framed

and necessary for decision from a clash of adversary argument." *United States v. Fruehauf*, 365 U.S.

146, 157 (1961). The Supreme Court has explained that "no justiciable controversy is presented"

if the parties merely seek an advisory opinion. *Flast v. Cohen*, 392 U.S. 83, 95 (1968). The ban on

---

[10] Recall that Plaintiffs have acknowledged that the Court lacks Article III power to enjoin "the challenged laws themselves" or to "bar" private litigants from suing under the Act. Doc. 22 at 24 n.11.

advisory opinions is an important limit on judicial power. *Id.* at 96 ("When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers pre-scribed by the Constitution and confines federal courts to the role assigned them by Article III.").

At bottom, Plaintiffs ask this Court to issue an advisory opinion to the world at large to discourage private lawsuits that may, or may not, arise at some undefined time in the future. The Court cannot acquiesce without stepping outside the bounds of Article III.

### ii. *Enjoining Defendants Would Offer Plaintiffs No Relief.*

Plaintiffs contend that *enjoining* each Defendant would provide at least some relief. Not so.

To begin, it's worth emphasizing that the parties agree that the standing analysis resembles the sovereign-immunity analysis under *Young. See* Doc. 22 at 20 ("Those requirements are closely related: Where an injury is redressed by a remedy impacting a defendant, that injury usually will be traceable to that defendant, too."); *see also City of Austin*, 943 F.3d at 1002 (the standing and *Young* analyses "significant[ly] overlap."). For the same reasons that no Defendant is sufficiently connected to the enforcement of the Private Enforcement for the purposes of sovereign immunity, any alleged injuries flowing from the Private Enforcement Act cannot be traced to any Defendant.

In any event, Plaintiffs try to explain how enjoining each of the Defendants would suppos-edly redress their injuries. But these explanations reveal that the proposed injunction would not address *any injury that Plaintiffs actually alleged in their complaint. See, e.g., California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered.").

Even Plaintiffs seem to acknowledge that enjoining Commissioner Dardenne from "promulgat[ing] rules and regulations to implement the [digitized credentialing] program" of the LA Wallet wouldn't redress any of the claims that they articulated in their complaint. Doc. 22 at 21. Plaintiffs appear to acknowledge that Commissioner Dardenne's "role in administering a key component of the scheme is more attenuated from some other constitutional infirmities that Plaintiffs have identified and which are unrelated to the availability of a state-provided means of accessing constitutionally-protected material online." Doc. 22 at 21 n.10 (emphasis omitted). The most Plaintiffs can say is that enjoining the Commissioner would prevent the "administration of an unregulated, half-baked program absent substantial improvements that may be negotiated as the case advances." Doc. 22 at 21. But this has *nothing* to do with the claims in Plaintiffs' complaint. Indeed, Plaintiffs seem to contemplate the Commissioner *resuming his activities* after unidentified "substantial improvements" occur. Doc. 22 at 21. Plaintiffs failed to show how enjoining the Commissioner would offer them any relief on any of their stated claims—which is what Article III requires.

Plaintiffs list the benefits they expect to gain from an order enjoining Secretary LeBlanc "from providing [] data files to Envoc and LA Wallet." Doc. 22 at 22. According to Plaintiffs, "DSPC is the repository of valuable age and identity information allowing for (relatively) frictionless Act-compliant 'reasonable age verification.'" Doc. 22 at 22. And Plaintiffs contend that, "by providing a *single* vendor the key to unlock access to all that information, DSPC has endowed Envoc with near monopoly power over qualifying age verification services in Louisiana." *Id.* Plaintiffs hope "that [a]n injunction precluding DPSC from providing those data files to Envoc and LA Wallet would, at minimum, place Envoc on similar footing as other vendors in the state—thereby eliminating barriers to market entry for aspiring age verification companies and driving down pricing

for consumers of age verification services." *Id.* Even if these contentions were correct, these benefits would not remedy any of the claims Plaintiffs' actually pleaded. Plaintiffs' can't transmogrify their pleaded First Amendment claims into unpleaded antitrust claims to try to satisfy Article III.

Finally, Plaintiffs acknowledge that "[s]tanding to sue the AG under the *Private* Enforcement Act is, admittedly, a closer call." Doc. 22 at 23. It's not a close call. If the Louisiana legislature had given the AG authority to enforce the Private Enforcement Act, one might reasonably wonder why the Louisiana legislature bothered to pass the Public Enforcement Act—which is virtually identical to the Private Enforcement Act except that it expressly charges the AG with the Public Enforcement Act's administration. The answer is obvious: The legislature passed the Public Enforcement Act precisely because the AG has no authority to enforce the Private Enforcement Act. And so, enjoining the AG from enforcing the Private Enforcement Act would provide no relief.

*     *     *

The Court should grant Defendants' Rule 12(b)(1) motion and dismiss for lack of subject-matter jurisdiction all of Plaintiffs' requests for relief except those requests for relief asserted against AG Landry related to his enforcement of the Public Enforcement Act.

Dated: July 28, 2023

Respectfully submitted,

/s/ Jordan Bailey Redmon
SHAE MCPHEE (La. Bar No. 38565)
  Deputy Solicitor General
JORDAN BAILEY REDMON (La. Bar No. 37272)
  Assistant Solicitor General
Louisiana Department of Justice
909 Poydras Street, Suite 1850
New Orleans, Louisiana 70112
Tel: (504) 556-9918
Fax:  (504) 556-9900
redmonj@ag.louisiana.gov
mcphees@ag.louisiana.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On July 28, 2023, I caused this document to be served electronically on enrolled counsel of record for Plaintiffs, Jeffrey Keith Sandman, by filing the document using the CM/ECF system.

/s/ Jordan Bailey Redmon
JORDAN BAILEY REDMON