## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREE SPEECH COALITION, INC., ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| **VERSUS** | **NO.  23-2123** |
| **JAMES M. LEBLANC, ET AL.,** | **SECTION: "E" (2)** |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is a Rule 12(b)(1) Motion to Dismiss[1] by Defendants James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("Secretary LeBlanc"); Jay Dardenne, Commissioner of the Louisiana Division of Administration ("Commissioner Dardenne"); and Jeffrey Landry, Attorney General of Louisiana ("AG Landry"). Each is sued in his official capacity.[2] Defendants urge this Court to dismiss all of Plaintiffs' claims arising out of La. R.S. § 9:2800.29 ("the Act") for lack of subject-matter jurisdiction.[3] Defendants argue Plaintiffs' claims are barred by sovereign immunity and Plaintiffs lack Article III standing. For the reasons that follow, Defendants' motion is **GRANTED.**

## FACTUAL BACKGROUND

In June 2022, Louisiana Governor John Bel Edwards signed the Act into law.[4] The law took effect on January 1, 2023.[5] The relevant parts of the Act impose liability on "[a]ny commercial entity that knowingly and intentionally publishes or distributes material

---

[1] R. Doc. 35.
[2] *See* R. Doc. 31.
[3] Defendants concede (R. Doc. 35 at p. 1) this Court has jurisdiction over Plaintiffs' claims against AG Landry with respect to the Public Enforcement Act, La. R.S. § 51:2121.
[4] R. Doc. 31 at p. 18.
[5] *See* Note, La. R.S. § 9:2800.29.

harmful to minors on the internet from a website that contains a substantial portion of such [harmful] material" if those commercial entities "fail[] to perform reasonable age verification methods to verify the age of individuals attempting to access the material."[6] Crucially, the Act is "intended to provide [through private actions] a civil remedy for damages against commercial entities who distribute harmful material to minors."[7] The Act does not explicitly charge any government official or entity with enforcement. Instead, the Act may be enforced only through private actions.[8] Under La. R.S. 9:2800.29(B)(3)(a), "[a]ny commercial entity that is found to have violated this Section shall be liable *to an individual* for damages resulting from a minor's accessing the material, including court costs and reasonable attorney fees as ordered by the court."[9]

The Act provides two options to meet he required "reasonable age verification."[10] The first option is for a commercial entity to verify that the person attempting to access

---

[6] § 9:2800.29(B)(1). Section 9:2800.29(D)(4) of the Act describes "material harmful to minors" as "all of the following:"

> (a) Any material that the average person, applying contemporary community standards would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest.

> (b) Any of the following material that exploits, is devoted to, or principally consists of descriptions of actual, simulated, or animated display or depiction of any of the following, in a manner patently offensive with respect to minors:
> > (i) Pubic hair, anus, vulva, genitals, or nipple of the female breast.
> > (ii) Touching, caressing, or fondling of nipples, breasts, buttocks, anuses, or genitals.
> > (iii) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, excretory functions, exhibitions, or any other sexual act.

[7] § 9:2800.29(A).
[8] In June 2023, Governor Edwards signed into law a companion act, the "Public Enforcement Act," codified at La. R.S. § 51:2121. The Public Enforcement Act took effect August 1, 2023.[8] As noted, *see* note 3, *supra,* Defendants do not contest this Court's jurisdiction over AG Landry with respect to the Public Enforcement Act.
[9] § 9:2800.29(B)(3)(a) (emphasis added).
[10] §§ 9:2800.29(D)(8)(a),(b).

the material is 18 years of age or older by requiring the person to "[p]rovide a digitized identification card as defined in R.S. 51:3211."[11] Alternatively, a commercial entity may require "the person attempting to access the [harmful] material to comply with a commercial age verification system that verifies" either through "[g]overnment-issued identification" or "[a]ny commercially reasonable method that relies on public or private transactional data to verify the age of the person attempting to access the information is at least eighteen years of age or older."[12]

## PROCEDURAL BACKGROUND

On June 20, 2023, Plaintiffs filed their first complaint seeking declaratory and injunctive relief against Secretary LeBlanc, Commissioner Dardenne, and AG Landry. At an August 17, 2023, status conference,[13] the Court gave Plaintiffs leave to file an Amended Complaint. Plaintiffs did so on August 25, 2023.[14]

Plaintiffs are a group of website operators, online content creators, and individuals who claim they each will be "substantial[ly] burden[ed]" by the Act's requirement that "websites . . . age-verify every internet user before providing access to non-obscene material that meets the State's murky definition of 'material harmful to minors.'"[15]

Plaintiffs assert a variety of federal claims under the First and Fourteenth Amendments, the Commerce Clause, and the Supremacy Clause.[16] Plaintiffs also allege

---

[11] § 9:2800.29(D)(8)(a). La. R.S. 51:3211(2) defines a "digitized identification card" as "a data file available on any mobile device which has connectivity to the internet" that is provided "through a state-approved application that allows the mobile device to download the data file from the Department of Public Safety and Corrections or an authorized representative of the Department of Public Safety and Corrections." The data file must "contain[] all of the data elements visible on the face and back of a license or identification card and display[] the current status of the license or identification card."
[12] § 9:2800.29(D)(8)(b).
[13] R. Doc. 28.
[14] R. Doc. 31.
[15] *Id.* at pp. 1–2, ¶¶ 1–3.
[16] *Id.* at pp. 38–43.

the Act "stand[s] in direct conflict with [47 U.S.C. § 230], which expressly preempts inconsistent state laws."[17] Plaintiffs assert the Act "[has] placed [them] in justified fear that, if they continue to exercise their constitutional rights, they will haled into court . . . by . . . any host of individuals alleging harm."[18] Plaintiffs believe they have "no adequate remedy at law."[19] Instead, they seek declaratory relief against Defendants under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and injunctive relief under 42 U.S.C. §§ 1983 and 1988.[20] Plaintiffs seek a declaration that the Act violates the Constitution and federal law[21] and an "injunction precluding" AG Landry, Secretary LeBlanc, and Commissioner Dardenne from "participating in the enforcement" of the Act.[22]

Defendants filed this Motion to Dismiss on September 4, 2023,[23] asking the Court to "dismiss for lack of subject-matter jurisdiction all [of Plaintiffs'] claims and requests for relief" under the Act.[24] Defendants argue that Plaintiffs' claims are barred by sovereign immunity and also fail for lack of standing.[25]

Plaintiffs filed their response in opposition on September 11, 2023.[26] Defendants replied on September 14, 2023.[27]

---

[17] *Id.* at p. 36, ¶ 85.
[18] *Id.*, ¶ 86.
[19] *Id.*
[20] *Id.* at p. 38.
[21] *Id.* at p. 43, ¶¶ 116–17.
[22] *Id.* at pp. 36–37, ¶¶ 87–89.
[23] R. Doc. 35.
[24] *Id.* at p. 1.
[25] R. Doc. 35-1, pp. 2–3.
[26] R. Doc. 36.
[27] R. Doc. 41.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[28] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[29] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[30] The party asserting jurisdiction bears the burden of establishing that the district court possesses subject-matter jurisdiction.[31] The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[32] The district court may consider facts contained in affidavits or sworn declarations.[33]

## LAW AND ANALYSIS

"Federal courts may analyze arguments that question our jurisdiction in any order."[34] The Court first considers Defendants' arguments based on the sovereign immunity provided by the Eleventh Amendment.

---

[28] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[29] Fed. R. Civ. P. 12(b)(1).
[30] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (cleaned up).
[31] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[32] *Id.*
[33] *See Williamson v. Tucker*, 645 F.2d 404, 411 (5th Cir.1981).
[34] *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015).

# I.  Plaintiffs have not established the requirements of the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity.

Plaintiffs have sued Secretary LeBlanc, Commissioner Dardenne, and AG Landry in their official capacities as state officials.[35] Accordingly, this is "effectively [a] suit[]" against the State of Louisiana.[36] As a general rule, the Eleventh Amendment bars lawsuits, like this one, "against nonconsenting states in federal court."[37] In 1908, the Supreme Court established an exception to Eleventh Amendment sovereign immunity in *Ex Parte Young*.[38] This exception permits private parties, like the Plaintiffs in this case, to challenge state laws through "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law"[39] In this case, Plaintiffs have pleaded the general elements of an action that fits within the exception to sovereign immunity provided by *Ex Parte Young*: (1) they seek both injunctive and declaratory relief;[40] (2) the named Defendants are individual state officials,[41] and (3) Plaintiffs allege Defendants, in support of the Act, are violating federal law.[42]

*Ex Parte Young* held that for the exception to apply, any state official named as a defendant must, "by virtue of his office," be "clothed with some duty in regard to the enforcement of the laws of the state"—including and especially the allegedly "unconstitutional act."[43] Importantly, "[t]he text of the challenged law need not actually state the official's duty to enforce it, although such a statement may make that duty

---

[35] R. Doc. 31 at p. 1.
[36] *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).
[37] *Id.* (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011)).
[38] 209 U.S. 123 (1908).
[39] *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013).
[40] *See* R. Doc. 31 at p. 4.
[41] *Id.* at p. 1.
[42] *Id.* at p. 4.
[43] 209 U.S. at 156, 158.

clearer."[44] Indeed, when the challenged state law specifies the official charged with its enforcement, no further exploration is needed to determine that official has a sufficient "connection with the enforcement" of that law.[45] When the challenged law does *not* specify an official responsible for its enforcement, "some connection with the enforcement of the act" may still be found in "the general law."[46] Whether the source of that "connection" is in the challenged statute or in other legislation, if the official "threaten[s] and [is] about to commence proceedings . . . to enforce . . . [the] unconstitutional act," a federal court may assert jurisdiction despite the Eleventh Amendment.[47]

### A. *Ex Parte Young* requires a state official have a particular duty to enforce a challenged law and the willingness to enforce it.

The Fifth Circuit has consistently applied *Ex Parte Young's* holding establishing a two-part test that requires a defendant state official to have "(1) the ability . . . to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness . . . to enforce the statute."[48] This distillation of *Ex Parte Young* was first explained by Judge Jolly, writing for a non-binding seven-judge plurality in 2001's *Okpalobi v. Foster*,[49] in which the Louisiana governor and attorney general invoked sovereign immunity as a defense to a suit brought by providers of abortion services.[50] The challenged law, Louisiana's "Act 825" of 1997,[51] was a private-right-of-action statute like

---

[44] *City of Austin*, 943 F.3d at 998 (citing *Ex Parte Young*, 209 U.S. at 157).
[45] *See id.*
[46] *Ex Parte Young*, 209 U.S. at 157.
[47] *Id.* at 156.
[48] *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir.2001) (en banc) (plurality opinion).
[49] 244 F.3d 405 (5th Cir.2001) (en banc).
[50] *Id.* at 409. Though Judge Jolly's opinion did not garner majority support, the Court notes that only three judges joined in the in an opinion written by Judge Parker, expressly dissenting from the plurality's opinion as to *Ex Parte Young. Id.* at 408 n.*
[51] La. R.S. 9:2800.12(A) (1999).

the Act in this case; it provided "women who undergo an abortion a private tort remedy against the doctors who perform the abortion."[52] Plaintiffs argued Act 825 was an unconstitutional "undue burden" on the right to an abortion.[53] Comparing Act 825 to the statutory and constitutional duties of the defendant state officials, the plurality reasoned the defendants had "no ability to enforce Act 825, a purely private tort statute, which can be invoked only by private litigants."[54] The plurality ruled "that the *Ex [P]arte Young* exception to the Eleventh Amendment [could not] be applied" under those facts.[55]

In a subsequent 2010 case also concerning abortion care, *K.P. v. LeBlanc*,[56] abortion providers challenged the constitutionality of a state statute[57] excluding abortion-related claims from coverage provided by a state-run medical compensation fund akin to malpractice insurance.[58] Plaintiffs sued members of Louisiana's Patient Compensation Fund Oversight Board, which had refused to pay from the fund when a patient brought a claim against her abortion provider. Again applying *Ex Parte* Young's two-part test, the *K.P.* panel summarized the defendants' duties as beginning with "deciding whether to have a medical review panel consider abortion claims and end[ing] with deciding whether to pay them."[59] By this standard, it was obvious to the court the Board was *willing* to enforce the law that excluded abortion-related claims from fund usage. Because this prong of *Ex Parte Young*'s two-part test was met, the panel focused on whether the Board had the duty to enforce the statute, holding that it did: the relevant statutory scheme

---

[52] *Okpalobi,* 244 F.3d at 417.
[53] *See Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833 (1992), *overruled by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).
[54] *Okpalobi,* 244 F.3d at 422.
[55] *Id.* at 429. A majority of the en banc court, *id.* at 408 n.*, joined the holding that Plaintiffs had no Article III standing and thus "plaintiffs [had] no case or controversy with the[] defendants." *Id.*
[56] 627 F.3d 115 (5th Cir. 2010).
[57] La. R.S. 9:2800.12(C)(2) (2010).
[58] *K.P.*, 627 F.3d at 119.
[59] *Id.* at 125.

"implicitly require[d] the Board to differentiate between claims allowable and not allowable" under the challenged law. Because state law imposed a duty to enforce and the willingness to enforce was apparent, the "suit [was] not barred by the Eleventh Amendment."[60]

In 2014's *Morris v. Livingston*,[61] a Fifth Circuit panel considered whether *Ex Parte Young* would permit a Texas inmate's § 1983 claims against the governor and the director of the Texas Department of Criminal Justice ("TDCJ").[62] The plaintiff challenged a Texas law that required inmates to "pay a $100 annual health care services fee" if they received medical treatment in the state's prisons.[63] Once again, the court asked whether the defendant officials had "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[64] Because the relevant Texas laws made it clear that TDCJ was responsible for the enforcement and administration of the health services fee, and because TDCJ had clearly enforced it, evincing an obvious willingness to enforce, the court held that *Ex Parte Young* permitted the claims against TDCJ's director. By contrast, the governor had no particular duty to enforce the fee, and the court affirmed his dismissal on sovereign immunity grounds.[65]

In *Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*,[66] decided in 2017, an air-ambulance company sued the Texas commissioner of insurance and the Texas commissioner of workers' compensation to challenge a state workers' compensation statute setting a maximum reimbursement for

---

[60] *Id.*
[61] 739 F.3d 740 (5th Cir. 2014).
[62] *Id.* at 742.
[63] *Id.*
[64] *Id.* at 746 (quoting *Okpalobi*, 244 F.3d at 414–15).
[65] *Id.* at 746.
[66] 851 F.3d 507 (5th Cir. 2017).

medical services, like air evacuation.[67] The panel again echoed *Ex Parte Young*'s two-part requirement that "defendants have some connection to the state law's enforcement and threaten to exercise that authority"[68] and found that based on the defendants' "rate-setting authority" and administrative duties to "arbitrat[e] fee disputes," defendants "effectively ensure[d] the maximum-reimbursement scheme [was] enforced from start to finish."[69] Thus, the panel held that the *Ex Parte Young* exception applied to permit the suit.[70]

In a 2020 COVID-era challenge to Texas mail-in ballot requirements, the Fifth Circuit panel in *Texas Democratic Party v. Abbott* reasoned that although "the precise scope of the requirement for a connection has not been defined, a plaintiff [invoking *Ex Parte Young*] at least must show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'"[71] After conducting a "provision-by-provision analysis" to determine whether the Texas secretary of state and attorney general had "the requirement connection to the enforcement of [the challenged law]," the panel held that the "the Secretary ha[d] at least a scintilla of enforcement authority" with respect to the challenged law.[72] The secretary had the "specific and relevant duty to design the application form for mail-in ballots" and to "provide that form to local authorities" and others who requested it.[73] Moreover, "local authorities [were] *required* to use the Secretary's absentee-ballot form outside of emergency situations," so the secretary had "the authority to compel or constrain local

---

[67] *Id.* at 510–13.
[68] *Id.* at 517 (citing *Ex Parte Young*, 209 U.S. at 157) (cleaned up).
[69] *Id.* at 519.
[70] *Id.*
[71] *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Morris*, 739 F.3d at 746).
[72] *Id.* at 180.
[73] *Id.* at 179 (citations omitted).

officials based on actions she [took] as to the application form."[74] As a result, *Ex Parte Young* applied to permit the suit against the secretary of state.[75]

However, the attorney general's broad "duty to enforce and uphold the laws of Texas" did not constitute a "particular duty" to enforce the challenged law. Although the attorney general had sent letters to "judges and election officials" reminding them that fraudulently applying for mail-in voting was a felony, the court found these letters did not in fact "threaten" or otherwise demonstrate a willingness to enforce the law sufficient to trigger *Ex Parte Young*.[76] The same outcome applied to the governor, who was "not statutorily tasked with enforcing the challenged law,"[77] and whose actions concerning elections in the early days of the COVID-19 pandemic were instead "exercises of [his] emergency powers unrelated to the Election Code."[78]

In 2022, a three-judge panel of the Fifth Circuit issued decisions on three separate challenges to Texas voting laws, each brought against the Texas secretary of state. Each opinion, issued on the same day, applied the two-part *Ex Parte Young* test.

In *Richardson v. Flores*,[79] Texas voters sued the secretary of state in a challenge to the constitutionality of Texas's signature verification process for mail-in ballots.[80] In a relatively brief opinion, the panel reasoned that *Ex Parte Young* did not apply because the first prong—a particular duty to enforce the statute in question—was not satisfied. The panel ruled that "it is local election officials, not the Secretary, who verify voters'

---

[74] *Id.* at 180 (emphasis added) (citations omitted).
[75] *Id.*
[76] *Id.* at 181.
[77] *Id.* at 180.
[78] *Id.*
[79] *Richardson v. Flores*, 28 F.4th 649 (5th Cir. 2022).
[80] *Id.* at 652. The voters also sued local officials seeking similar relief, but the district court issued a detailed injunction against only the secretary of state. *Richardson v. Hancock, et al.*, 485 F.Supp.3d 744, 812 (W.D. Tex. 2020).

signatures [on mail-in ballots] and notify voters of a mismatch."[81] In turn, the court also explained that the secretary's other duties related to elections and ballots were the more general duties that did not amount to a particular duty to enforce the statute in question.[82] No analysis of the second prong, the secretary's willingness to enforce the non-existent duty, was needed to hold that sovereign immunity barred the claims against the secretary of state.

In *Lewis v. Scott*,[83] Texas voters and voting rights groups challenged various provisions of Texas's vote-by-mail scheme in light of the challenges posed by the COVID-19 pandemic. As in *Richardson*, the panel, applying *Ex Parte Young*'s two-part test, ruled that the secretary of state did *not* have the particular duty to enforce the various challenged laws; those respective duties fell to the early voting clerk, local election officials, and local prosecutors.[84] The duties identified by the voters fell under the secretary's "general duties" as the "chief election officer" who, for example, had a duty to "assist and advise" election officials and "take appropriate action to protect voting rights."[85] The court found the actions cited by plaintiffs failed to show enforcement of any of the challenged provisions.[86]

In the third of the companion Texas election cases, *Texas Alliance for Retired Americans v. Scott*,[87] civic and political organizations sued the secretary of state challenging the constitutionality of Texas's elimination of straight-ticket voting.[88] The

---

[81] *Richardson*, 28 F.4th at 654 (quotation omitted).
[82] *Id.*
[83] 28 F.4th 659 (5th Cir. 2022).
[84] *Id.* at 663–64.
[85] *Id.* at 664.
[86] *Id.* at 664 n.8.
[87] *Texas All. for Retired Americans v.* Scott, 28 F.4th 669 (5th Cir. 2022).
[88] *Id.* at 670.

panel relied on *Ex Parte Young*'s holding that a state official "must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[89] The elimination of straight-ticket voting had been effected by repealing a law that "required that a square for straight-ticket voting shall be printed to the left of each political party's name."[90] But it was local officials—a county clerk, county party chair, city secretary, or other local official—who had the particular duty to print the ballots.[91] Similarly, the secretary's other "responsibilities" for voter education, coordination with local officials, and the design of write-in and provisional ballots—as opposed to in-person ballots—were not particular duties related to enforcing the challenged law repealing straight-ticket voting.[92] The court did not reach the issue of whether the secretary clearly had a willingness to enforce the statute. *Ex Parte Young* did not allow the plaintiffs to overcome sovereign immunity.[93]

Lastly, *Ostrewich v. Tatum,*[94] decided this year, once more examined whether defendant state officials had a "particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[95] A Texas voter sued the Texas attorney general, the Texas secretary of state, and local county officials in a First Amendment challenge to a law that criminalized political expression within polling places.[96] The *Ostrewich* panel held that neither the Texas secretary of state nor the Texas attorney general had a particular duty sufficient to satisfy *Ex Parte Young*'s first requirement.

---

[89] *Id.* at 672. (quotation omitted).
[90] *Id.* at 672 (citing Tex. Elec. Code § 52.071(a) (*repealed eff.* Sept. 1, 2020)) (cleaned up).
[91] *Id.* at 673.
[92] *Id.*
[93] *Id.*
[94] *Ostrewich v. Tatum*, 72 F.4th 94 (5th Cir. 2023).
[95] *Id.* at 100 (quotation omitted).
[96] *Id.* at 97.

Though the secretary of state was responsible for training local presiding judges to enforce election laws, like the one in question, the particular duty to *enforce* those laws fell to the judges. Similarly, it was local prosecutors, not the state's attorney general, who had the ultimate authority to prosecute election-related offenses.[97] As a result, *Ex Parte Young* did not permit the suit to proceed against the attorney general or secretary of state.

It is clear that in the Fifth Circuit, the test for an exception to Eleventh Amendment sovereign immunity is the two-part test first articulated in *Ex Parte Young*: a defendant state official must have a particular duty to enforce a challenged statute and demonstrate a willingness to enforce that statute.

**B. No defendant has a particular duty to enforce the Act or a demonstrated willingness to enforce it.**

The Court examines Defendant's Motion to Dismiss person-by-person and claim-by-claim based on the principles set forth above.

**1. Jay Dardenne, Commissioner of the Louisiana Division of Administration, does not have a particular duty to enforce the Act or a demonstrated willingness to enforce it.**

Plaintiffs seek to prohibit Commissioner Dardenne from participating in the enforcement of the Act. They allege "Commissioner Dardenne has some connection with the enforcement of [the Act]" because the state division he leads administers LA Wallet and he has recognized "LA Wallet as [Louisiana's] only qualifying 'digitized identification card.'"[98] Plaintiffs allege LA Wallet is administered by the Louisiana Division of Administration.[99] Plaintiffs allege, and Defendants do not contest, that only LA Wallet satisfies the Act's definition of "a digitized identification card as defined in R.S. §

---

[97] *Id.* at 101 (citing relevant Texas case law and statutes).
[98] R. Doc. 31 at p. 12, ¶ 29.
[99] *Id.* at p. 11, ¶ 27.

51:3211."[100] Relying on Judge Dennis's concurrence in *K.P.*,[101] Plaintiffs argue Commissioner Dardenne "gives effect to" the Act through his oversight of LA Wallet, and this effectuation means Commissioner Dardenne enforces the Act.[102]

To support their claims against Commissioner Dardenne, Plaintiffs argue that LA Wallet is the state's "one and only . . . qualifying 'digitized identification card'" as described in the Act.[103] However, even if this is undisputed, the Plaintiffs have not met their burden of providing Commissioner Dardenne has a particular duty to enforce the Act.[104]

The best argument that Commissioner Dardenne in effect enforces the Act would be to show that LA Wallet is, in reality, the *only* acceptable age verification method to comply with the Act and that Commissioner Dardenne does not permit commercial entities and individuals providing material the Act defines as "harmful to minors," such as the Plaintiffs, to use it. Plaintiffs do not make this argument and, if they did, it would not be successful. In a declaration, Michael Dupree, Director of the Public Protection Division of the Louisiana Department of Justice, stated that he knows of at least three commercial entities that use LA Wallet to comply with the age-verification requirements of the Act through the use of AllPassTrust.[105] Plaintiffs do not dispute this.[106]

Plaintiffs do allege Commissioner Dardenne enforces the Act because, even if commercial entities such as the Plaintiffs are allowed to use LA Wallet, LA Wallet is the

---

[100] *Id.*; La. R.S. § 9:2800.29(D)(2). *See also* note 11, *supra*.
[101] 627 F.3d at 127 (Dennis, J., concurring).
[102] R. Doc. 36 at pp. 16–17.
[103] R. Doc. 31 at p. 11, ¶ 27; R. Doc. 36 at pp. 12–13. *Cf.* R. Doc. 35-1 at p. 18.
[104] R. Doc. 31 at p. 11, ¶¶ 28-30.
[105] Delcl. of Michael Dupree, R. Doc. 47-2 at p. 2, ¶ 5. AllPassTrust is an age-verification compliance platform. On its website, AllPassTrust represents that it works with LA Wallet. *AllPassTrust*, https://www.allpasstrust.com/en (last visited Oct. 2, 2023) [https://perma.cc/Y8GS-L86G].
[106] *See* R. Doc. 48.

only qualifying age-verification method that complies with § 9:2800(D)(8) of the Act.[107] Neither is this argument successful. The Act makes clear that, apart from verifying a user's age through a digitized identification card, a commercial entity may comply by using another "commercial age verification system" that verifies a user's age through a "[g]overnment-issued identification" *or* any other "commercially reasonable method."[108] In his declaration, Director Dupree listed *fourteen* "vendors that offer age verification services that apparently do not require LA Wallet and that a commercial entity may nonetheless use to satisfy" the age verification requirements of the Act.[109] In a response,[110] Plaintiffs provided a declaration from Dominic Ford,[111] managing and sole member of Plaintiff JFF Publications, LLC. Mr. Ford states that one of the vendors listed by Director Dupree, Stripe, does not "do business" with "adult businesses."[112] This does not negate Director Dupree's general point that there are many other options beyond LA Wallet available to satisfy the age-verification requirements of the Act.

The Fifth Circuit cases finding a particular duty to enforce under the two-part *Ex Parte Young* test all involved a much clearer duty to enforce the challenged law than Plaintiffs establish for Commissioner Dardenne. The defendant board members in *K.P.* were the final arbiters of whether a claim was paid or not from the medical compensation fund.[113] The defendants in *Air Evac* set the upper limit on reimbursement rates under the challenged statute and ensured the maximum-reimbursement provision was enforced

---

[107] R. Doc. 31 at pp. 11–12, ¶ 28.
[108] § 9:2800.29(D)(8)
[109] Decl. of Michael Dupree, R. Doc. 47-2 at pp. 3–4.
[110] R. Doc. 48.
[111] Decl. of Dominic Ford, R. Doc. 48-2.
[112] *Id.* at p. 3, ¶ 30.
[113] *K.P.*, 627 F.3d at 125.

from start to finish.[114] The secretary of state in *Texas Democratic Party* designed the mail-in ballot form at the center of the constitutional challenge and furnished it to local officials who were required to use it.[115]

The strength of Commissioner Dardenne's connection to enforcement of the Act does not approach the level of those scenarios described above. Plaintiffs allege Commissioner Dardenne enforces the Act because, even if they are allowed to use LA Wallet, the fact that it is the only qualifying "digitized identification card" means the operation of the Act is predicated upon the exclusive use of such a card.[116] Quite obviously, the multiple options for age-verification compliance defeat Plaintiff's argument that Commissioner Dardenne has a particular duty to enforce the Act solely because his division administers LA Wallet.

Though *Ex Parte Young* did not provide a precise definition of enforcement,[117] the *K.P.* court, relying on an alternative definition from Webster's dictionary, observed that "[e]nforcement typically involves compulsion or constraint." This "compulsion or constraint" definition of enforcement has carried the day in this circuit's *Ex Parte Young* caselaw since. In 2017,[118] 2019,[119] 2020,[120] twice in 2022,[121] and again this year,[122] panels of the Fifth Circuit followed *K.P.* and looked for some degree of "compulsion or

---

[114] *Air Evac*, 851 F.3d at 514.

[115] *Texas Democratic Party*, 978 F.3d at 179–180.

[116] R. Doc. 31 at pp. 11–12, ¶ 28.

[117] *See Ex Parte Young*, 209 U.S. at 156 (explaining that an official charged with enforcement "may threaten . . . proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act").

[118] *Air Evac*, 851 F.3d at 519.

[119] *City of Austin*, 943 F.3d at 1002.

[120] *Texas Democratic Party*, 978 F.3d at 180.

[121] *Richardson*, 28 F.4th at 655; *Texas All. for Retired Americans*, 28 F.4th at 673.

[122] *Ostrewich*, 72 F.4th at 101.

constraint" in the duties of a state official when ruling on *Ex Parte Young* exceptions to defenses of sovereign immunity.

The overwhelming weight of authority from the Fifth Circuit, which this Court is bound to follow, provides that "enforcement" means "compulsion or constraint." Even were this Court to apply the "give effect to" definition of enforcement, Commissioner Dardenne can hardly be said to give effect to a statute requiring age verification when there are, counting LA Wallet, as many as fifteen options for compliance.[123] He does not constrain the options that providers have to comply with the Act. He does not compel (nor do Plaintiffs argue as such) providers to use LA Wallet and forgo other options.

Plaintiffs do not allege Commissioner Dardenne has any willingness to enforce the Act apart from his willingness to administer his division and LA Wallet, which is not sufficient. The claims against Commissioner Dardenne fail both prongs of the *Ex Parte Young* two-part test. Sovereign immunity bars the claims against Commissioner Dardenne.

### 2. James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, does not have a particular duty to enforce the act or a demonstrated willingness to enforce it.

Plaintiffs also seek to prohibit Secretary LeBlanc from participating in the enforcement of the Act. Plaintiffs allege "Secretary LeBlanc has some connection with the enforcement of [the Act]" because the department he heads operates the Office of Motor Vehicles (OMV) database, which contains data without which "LA Wallet simply couldn't function."[124] The essence of this argument is the same as Plaintiffs' argument with respect

---

[123] *See* notes 109–112, *supra*, and accompanying text. Accepting Plaintiffs' evidence that Stripe is not a viable option, the number of options may still be fourteen, including LA Wallet. *See* Decl. of Dominic Ford, R. Doc. 48-2 at p. 3, ¶ 30.

[124] R. Doc. 31 at p. 14, ¶ 32.

to Commissioner Dardenne, namely, that LA Wallet is the only qualifying age-verification method that complies with § 9:2800(D)(8) of the Act. Thus, Plaintiffs argue, Secretary LeBlanc's connection to the data needed to operate LA Wallet constitutes a particular duty to enforce the Act.[125]

This theory was not sufficient to establish any particular duty of enforcement for Commissioner Dardenne.[126] *A fortiori*, it fails with respect to Secretary LeBlanc, who does not even administer LA Wallet, but merely oversees a department that operates a dataset *used* by LA Wallet. Plaintiffs argue, in total, that Secretary LeBlanc enforces the Act because he is the head of a department that oversees a dataset used by LA Wallet and that LA Wallet may be used to comply with the Act. This connection between the Act and Secretary LeBlanc's general duties is even more attenuated than Commissioner Dardenne's. Plaintiffs make no argument that Secretary LeBlanc has a willingness to enforce the Act other than his willingness to administer his responsibilities with respect to his department. Plaintiffs' claims against Secretary LeBlanc do not satisfy *Ex Parte Young*'s two-part test. Sovereign immunity bars Plaintiffs' claims against Secretary LeBlanc.

### 3.  Jeffrey Landry, Attorney General of Louisiana, does not have a *particular* duty to enforce the Act.

Plaintiffs seek an injunction against AG Landry precluding his participation in the enforcement of the Act.[127] Plaintiffs allege AG Landry has "some connection to the enforcement" of the Act because "he is responsible for the 'assertion or protection of any right or interest of the state of Louisiana,' and for the legal representation of governmental

---

[125] *Id.*
[126] *See* Part B.1, *supra*.
[127] R. Doc. 31 at p. 36, ¶ 89.

officers, agencies, boards, of commissions.'"[128] Plaintiffs also allege a connection based on AG Landry's discretionary responsibility to defend the interests of the state and the Act's constitutionality.[129]

In sum, Plaintiffs' theory of AG Landry's duty to enforce the Act hinges on "merely [his] duty to see that the laws of the state are implemented."[130] Even accepting Plaintiffs' argument that AG Landry "has manifested his intention to 'represent or supervise the representation' of the State's interest in any forthcoming litigation brought under" the Act,[131] this is no more than a willingness to exercise his general duties as attorney general of the state. This is the *opposite* of the "particular duty" required by *Ex Parte Young*. The Fifth Circuit has consistently held that general duties cannot provide the particular duty of enforcement required to overcome sovereign immunity.[132] For this reason, sovereign immunity bars Plaintiffs' claims against AG Landry with respect to the Act.

## II.    Plaintiffs do not have Article III standing to bring their claims.

"Article III of the United States Constitution limits the jurisdiction of federal courts to actual 'Cases' and 'Controversies.'"[133] "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."[134] Because standing is a matter of subject-matter jurisdiction, a motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1).[135] Federal courts must dismiss an action if, "at any time," it is determined that subject-matter jurisdiction

---

[128] *Id.* at p. 16, ¶ 36 (citing La. R.S. 36:704(E)).
[129] *Id.*
[130] *Morris*, 739 F.3d at 746 (citing *Okpalobi*, 244 F.3d at 405).
[131] R. Doc. 31 at p. 16, ¶ 36.
[132] *E.g.,* Morris, 739 F.3d. at 746; *Texas Democratic Party*, 978 F.3d at 180.
[133] *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) (citing U.S. CONST., art. III, § 2).
[134] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (cleaned up).
[135] *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of standing may be either 'facial' or 'factual.'" *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

is lacking.[136] As the party invoking federal jurisdiction, the plaintiff constantly bears the burden of establishing the jurisdictional requirements, including standing.[137]

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"[138] The first prong focuses on whether the plaintiff suffered harm, the second focuses on who inflicted that harm, and the third focuses on whether a favorable decision will likely alleviate that harm.[139] "If any one of these three elements—injury, causation, and redressability—is absent, plaintiffs have no standing in federal court under Article III of the constitution to assert their claim."[140]

In this case, Plaintiffs fail to establish the causation and redressability required for standing.[141] Broadly, Plaintiffs allege that the Act chills and infringes on speech, "burden[s] interstate commerce," and violates other federal laws. The engine of the Act's operation, Plaintiffs argue, is the Act's private-right-of-action provision: the burden on Plaintiffs' speech and commerce is reinforced by their "justified fear that . . . they will be haled into court . . . by any number of private individuals alleging harm" under the Act.[142]

---

[136] *See* Fed. R. Civ. P. 12(h)(3).
[137] *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted); *Crane*, 783 F.3d at 251.
[138] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).
[139] *See Lujan*, 504 U.S. at 560–61.
[140] *Okpalobi*, 244 F.3d at 425.
[141] "Article III standing analysis and *Ex [P]arte Young* analysis significantly overlap." *City of Austin*, 943 F.3d at 1002 (5th Cir.2019) (quotation omitted). A threat of enforcement from a state official with a particular duty to do so sufficiently constitutes a "threatened injury" for Article III standing. *Id.* (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015)). The state official is the cause of that injury, and enjoining his enforcement would redress the harm.
[142] R. Doc. 31 at p. 36, ¶ 86.

Nowhere do Plaintiffs show how Defendants are the cause of the Act's alleged harms, and the remedies Plaintiffs seek would not redress their alleged injuries.

"Plaintiffs seek an injunction against all Defendants precluding their participation in the enforcement" of the Act.[143] Based on Plaintiffs' theories about each of the Defendants' roles in enforcement,[144] they seek an injunction prohibiting: (1) Commissioner Dardenne from operating LA Wallet, (2) Secretary LeBlanc from providing the OMV data to be used in LA Wallet, and (3) AG Landry from exercising his general duty to defend the Act's constitutionality. Were such an injunction issued, any individual could *still* bring a suit for damages against a provider.[145] This injunctive relief would not redress Plaintiffs' "justified fear" that "they will be haled into court."[146] If the threat of a private suit for damages imposes a burden on Plaintiffs' rights, an injunction against these three Defendants would not redress that threat. Despite Plaintiffs' argument otherwise, it is not the operation of LA Wallet that is the source of their alleged injury; their redressability argument hinges on their belief that the injunctions would preclude state officials from "performing functions that are indispensable to [the Act's] statutory scheme,"[147] but as explained, this is not true. Indeed, "[f]or all practical purposes, the injunction granted by [this] district court [would be] utterly meaningless."[148]

The same applies to Plaintiffs' prayer for a declaratory judgment that the Act is in violation of federal law. A declaratory judgment is a "definitive determination of the legal rights of the *parties*."[149] Binding any of the Defendants through such a judgment, were

---

[143] *Id.* at p. 39, ¶ 95.
[144] *See id.* at pp. 10–17.
[145] *See* § 9:2800.29(B)(3).
[146] R. Doc. 31 at p. 36, ¶ 86.
[147] R. Doc. 36 at p. 26–27.
[148] *Okpalobi*, 244 F.3d at 426.
[149] *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 200 (2014) (emphasis added) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)).

the Court to have jurisdiction to do so, would not bind any of the private citizens who may bring a suit under the Act.[150] Rather, "proper declaratory judgments . . . have preclusive effect on a traditional lawsuit that is imminent."[151] Any such declaration against Commissioner Dardenne, Secretary LeBlanc, or AG Landry would not bind any of those private citizens who may bring suit under the Act, and the declaration thus would not provide "redress for the claimed injury resulting from . . . this [allegedly] unconstitutional statute—that is, the filing and prosecution of a private civil action."[152]

Because Plaintiffs have not shown how Defendants are the cause of their alleged injury, and because this Court cannot provide any redress, Plaintiffs lack Article III standing.

## CONCLUSION

The Plaintiffs have failed to meet their burden of establishing that the *Ex Parte Young* exception to Eleventh Amendment to sovereign immunity applies to these claims and that the Plaintiffs have standing to bring them. Plaintiffs' claims against Commissioner Dardenne, Secretary LeBlanc, and AG Landry for declaratory and injunctive relief with respect to the Act are **DISMISSED** without prejudice.

**New Orleans, Louisiana, this 4th day of October, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[150] This is no accident. The Act appears "designed to [be] shield[ed]" from pre-enforcement "judicial review." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 59 (2021) (Roberts, C.J., concurring in part, dissenting in part).

[151] *Brackeen v. Haaland*, 994 F.3d 249, 448 (5th Cir.2021) (Costa, J., concurring in part and dissenting in part), *aff'd in part, vacated in part, rev'd in part*, 599 U.S. 255 (2023); *see also* 10B Fed. Prac. & Proc. Civ. § 2771 (4th ed.) ("A declaratory judgment is binding on the parties before the court and is claim preclusive in subsequent proceedings as to the matters declared . . . .").

[152] *Okapalobi*, 244. F.3d at 428.